# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIELLE VELKOFF, | : | CIVIL ACTION - LAW |
| PLAINTIFF | : | |
| | : | |
| v. | : | |
| | : | DOCKET NO.: |
| PAJAMA FACTORY, LLC, | : | |
| DEFENDANT | : | |
| | : | JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiff Danielle Velkoff ("Plaintiff") brings this lawsuit against Pajama Factory, LLC ("Defendant"), seeking all available relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et. seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951, *et. seq.*

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. On March 10, 2020, Plaintiff filed with the Pennsylvania Human Relations Commission ("PHRC") the attached Employment Discrimination Questionnaire, alleging inter alia, that Defendant subjected her to harassment and discrimination based on her sex and constructively terminated her employment in violation of the anti-discrimination provisions of Title VII and the PHRA. (Exhibit A)

2. On October 18, 2021, the PHRC issued to Plaintiff the attached "Notice of Right to Sue" letter to Plaintiff. (Exhibit B)

3. On September 2, 2021, Plaintiff sent to the Equal Employment Opportunity Commission ("EEOC") the attached letter requesting a Right to Sue letter. (Exhibit C)

4. On September 15, 2021, the EEOC issued the attached "Notice of Right to Sue" to Plaintiff. (Exhibit D)

5. Based on the above, Plaintiff has exhausted her administrative remedies and satisfied all prerequisites to suit.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

8. Plaintiff is an individual residing in Muncy, Lycoming County, Pennsylvania.

9. Defendant is a Limited Liability Company with a primary business address of 1307 Park Avenue in Williamsport, Lycoming County, Pennsylvania.

## FACTUAL ALLEGATIONS

10. Defendant is believed to have employed 15-20 people at the time Plaintiff was employed.

11. In September 2016, Defendant hired Plaintiff as a part-time Events Coordinator.

12. In March 2017, Defendant hired Plaintiff for a full-time Events and Business Development position.

13. Throughout her employment, Plaintiff diligently and competently performed her job duties.

14. In the fall of 2017, Defendant hired Jon Waller as a Project Manager.

15. On May 14, 2018, coworker Jon Waller had an aggressive outburst. (Exhibit E)

16. On May 15, 2018, Plaintiff made her first formal complaint regarding Jon Waller's outburst at the meeting the previous day and that he had

become increasingly aggressive and hostile and had been making sexist remarks to her. (Exhibit F)

17. On June 11, 2018, Defendant sent out an email in which they detailed ways that the work environment could improve. In the email chain sent with this email Jon Waller's behavior is noted. (Exhibit G)

18. On June 19, 2018, Plaintiff sent an email to Defendant responding to the above-mentioned email. (Exhibit H)

19. On June 19, 2018, Plaintiff emailed Defendant her job self-evaluation. (Exhibit I)

20. On June 22, 2018, Defendant sent an email to Plaintiff regarding Jon Waller's "unacceptable behavior." In this email the employees were instructed to "politely [tell] him when he is crossing a line" with his behavior. (Exhibit J)

21. Sometime in the late fall or autumn of 2018, Plaintiff compiled a list of incidents and behaviors that had happened resulting from Jon Waller's behavior and submitted it to Defendant. (Exhibit E)

22. On September 4, 2018, Plaintiff emailed Defendant regarding an incident between Jon and another employee which occurred in the courtyard. (Exhibit K)

23. On September 4, 2018, Defendants emailed Plaintiff that the above incident in the courtyard should not have occurred there. (Exhibit L)

24. On October 10, 2018, Defendant emailed Plaintiff regarding communication problems they stated she was having. (Exhibit M)

25. On December 30, 2018, Jon Waller had another violent aggressive and hostile outburst while she was having a conversation with another male coworker, refuting what Plaintiff was trying to instruct that coworker on. (Exhibit N)

26. On December 30, 2018, Plaintiff submitted another formal complaint in regard to Jon Waller's behavior. (Exhibit N)

27. On January 14, 2019, a meeting was held regarding Jon Waller's behavior during which Plaintiff took notes. (Exhibit O)

28. On March 16, 2019, Plaintiff emailed Defendant regarding failures of management to enforce proper protocol and penalties. (Exhibit P)

29. On March 18, 2019, Defendant sent an email following up on the above email stating that a plan would be put in place to enforce proper protocol and policies. (Exhibit Q)

30. On March 18, 2019, Plaintiff emailed Defendant regarding Defendant's behavior in front of other employees during a meeting regarding her employment perks. (Exhibit R)

31. On September 17, 2019, Jon Waller had a violent outburst, of which much was recorded. During this outburst he blocked Plaintiff and another female coworker in the office, after a third female coworker had left the room because he was ripping up papers, slamming drawers, and screaming, making it impossible to focus on work and her shift was nearing its' end. Plaintiff and the other coworker witnessed Jon continue to scream and slam drawers, and push office furniture around. At this point, fearing for their safety, Plaintiff asked him to please calm down or she would have to ask him to leave, as they had been instructed to do in the email from Defendant on June 22, 2018 email. At this point his rage increased and he screamed at her not to tell him what to do. At one point charged at Plaintiff and pointed his finger in her face to "warn" her to stop telling him how to behave. Much of this incident was caught on recording. When he finally agreed to leave the room he screamed several demeaning things at her such as "go to Hell," "go fuck yourself," and that she was "a goddamn bitch." After he left the room he screamed from the hallway that she was a "cunt," which was one of several times that he had used that word to refer to Plaintiff or other female coworkers. (Exhibit S)

32. On September 17, 2019, Plaintiff submitted yet another formal complaint in regard to Jon Waller's behavior. (Exhibit S)

33. On September 17, 2019, Plaintiff sent an email to Mark and Suzanne Winkelman regarding the above incident. (Exhibit T)

34. On September 17, 2019, Suzanne sent an email to Plaintiff regarding the above incident. (Exhibit U)

35. On September 20, 2019, Plaintiff sent an email to Defendant with incident reports, a timeline, and suggesting an appropriate resolution. (Exhibit V)

36. On October 2, 2019, Defendant responded to the above email stating that they were "handling the situation." (Exhibit W)

37. On October 3, 2019, Plaintiff responded to the above email. (Exhibit X)

38. On October 3, 2019, Defendant emailed Plaintiff stating that they would like to meet with her in person. (Exhibit Y)

39. On October 21, 2019, Plaintiff emailed Defendant stating that despite the fact that they had stated Jon Waller would no longer be present in the office with her, he was there in the office that morning. (Exhibit Z)

40. On December 2, 2019, Plaintiff submitted her letter of resignation. (See Exhibit AA)

41. The conduct described in this Complaint was based on Plaintiff's sex; but not for Plaintiff's sex she would not have been subjected to such conduct.

42. The conduct described in this Complaint was pervasive and ongoing.

43. The conduct described in this Complaint detrimentally affected Plaintiff by, inter alia, causing her extreme emotional distress.

44. The conduct described in this Complaint would detrimentally affect any reasonable female employee.

45. The conduct described in this Complaint resulted in a hostile work environment for the Plaintiff.

46. Throughout Jon Waller's employment Plaintiff had several discussions, in person and via email with owners Mark and Suzanne Winkelman regarding ways to improve the workplace, curb Jon Waller's behavior, and establish policies and procedures to ensure things there was a system in place to protect Plaintiff from his behavior and ensure that he would be appropriately reprimanded when necessary.

47. Throughout Jon Waller's employment, Plaintiff took on more and more of his tasks that he was not made to complete because they either caused him too much agitation to complete or because he just did not want to do them. Despite her taking on more and more work of his, she was not given an increase in wages, nor was she promoted to a new position that would have actually entailed those additional tasks or more pay. She was simply expected to take on his work. (Exhibit BB)

48. In the aftermath of all these incidents, Plaintiff was told by Defendant that she should not have provoked Jon, that she should have de-escalated things, that she should have been the one to walk away, or that she should just ignore him. Despite several documented instances of him treating Plaintiff and other females aggressively, he was never reprimanded for his behavior. Instead, she and others were blamed for his outbursts.

49. Defendant took no action against Jon Waller after Plaintiff's complaints were presented.

50. On December 2, 2019, after repeated incidents of hostility and aggressiveness from the coworker Jon Waller and the repeated failure of Defendant to reprimand him or otherwise put an end to his behavior, Plaintiff was forced to resign for the good of her physical and mental well-being. (Exhibit AA)

51. Following Plaintiff's resignation, Jon Waller continued to post negative things about her on public online forums. (Exhibit CC).

52. Plaintiff sent text messages to Defendant regarding the posts that Jon Waller was making about others online. (Exhibit DD)

53. On December 12, 2019, Plaintiff emailed Defendant in regard to employees being permitted to publically ridicule others and it was cause for an employee handbook to be established. (Exhibit CC)

54. At one point Defendant had sent text messages to Plaintiff stating that he would be "bowing out of direct involvement" with the situation because he had a "decades old personal relationship with Jon." He also suggests in these text messages that another (male) employee act as a mediator for the "conflict." (See Exhibit EE)

55. As a result of the hostile work environment and constructive discharge described above, Plaintiff has suffered emotional injury, psychological injury, and financial loss including, inter alia, lost past and future earnings benefits.

## COUNT I
### (Alleging Violations of Title VII)

56. Plaintiff repeats and asserts the allegations set forth in paragraphs 1 through 74 as though fully stated herein.

57. Title VII prohibits employers from discriminating against employees based on sex, and, as such, prohibits employers from subjecting employees to a hostile work environment based on sex.

58. Plaintiff is a covered employee entitled to Title VII protections.

59. Defendant is an employer covered by Title VII.

60. Defendant violated Title VII by subjecting Plaintiff to a hostile work environment that was motivated entirely by Plaintiff's sex.

61. Defendant violated Title VII by constructively terminating employee's employment.

62. As a result of the hostile work environment and constructive discharge described above, Plaintiff has suffered emotional injury, psychological injury, and financial loss, including, inter alia, lost past and future earnings and benefits.

## COUNT II
### (Alleging Violations of the PHRA)

63. Plaintiff repeats and reasserts the allegations set forth in paragraphs 1 through 74 as though fully stated herein.

64. The PHRA prohibits employers from discriminating against employees based on sex, and, as such, prohibits employers from subjecting employees to a hostile work environment based on sex.

65. Plaintiff is a covered employee entitled to the PHRA's protections.

66. Defendant is an employer covered by the PHRA.

67. Defendant violated the PHRA by subjecting Plaintiff to a hostile work environment that was motivated entirely by Plaintiff's sex.

68. Defendant violated the PHRA by constructively terminating Plaintiff's employment.

69. As a result of the hostile work environment and constructive discharge described above, Plaintiff has suffered emotional injury, psychological

injury, and financial loss, including, inter alia, lost past and future earnings and benefits.

## COUNT III
### (Alleging Violations of 43 P.S. 955 (d), Retaliation)

70. Plaintiff repeats and reasserts the allegations set forth in paragraphs 1 through 74 as though fully stated herein.

71. Employers are prohibited, in 43 P.S. 955 (d), from discriminating in any manner against an individual because such individual has opposed any practice forbidden by the Act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding, or hearing under the Act.

72. Defendant violated 43 P.S. 955 (d) by forcing Plaintiff to continue to work with Jon Waller after her numerous complaints regarding his behavior were made directly to them.

73. After Plaintiff reported Jon Waller, the Defendant continuously reprimanded Plaintiff, told her that she was causing his behavior, that she was being too emotional, that she should have simply ignored him, etc. Defendant eventually forced Plaintiff to resign when Plaintiff's actions were legally appropriate and she had not received reprimands or write-ups previously for her same or similar conduct, and Jon Waller was not being reprimanded for his behavior.

74. As a result of the hostile work environment and constructive discharge described above, Plaintiff has suffered emotional injury, psychological injury, and financial loss, including, inter alia, lost past and future earnings and benefits, and medical bills and expenses.

## PRAYER FOR RELIEF

**Wherefore,** Plaintiff seeks the following relief:

**A.** Compensatory damages including compensation for pain and suffering, as well as physical, emotional and psychological injury, to the fullest extent permitted by law;

**B.** Recovery of all past and future lost wages, fringe benefits and out-of-pocket expenditures;

**C.** Punitive damages, monetary penalties and prejudgment interest to the fullest extent permitted under the law;

**D.** Litigation costs, expenses and attorney's fees to the fullest extent permitted under the law; and

**E.** Such other and further relief as this Court deems just and proper.

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIELLE VELKOFF, | : | CIVIL ACTION - LAW |
| PLAINTIFF | : | |
| | : | |
| v. | : | |
| | : | DOCKET NO.: |
| PAJAMA FACTORY, LLC, | : | |
| DEFENDANT | : | |
| | : | JURY TRIAL DEMANDED |

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial as to all claims so triable.

    Respectfully Submitted,
    LEPLEY, ENGELMAN,
    YAW, & WILK, LLC

    /s/Douglas N. Engelman, Esq.
    Douglas N. Engelman, Esq.
    ID#34839
    140 East Third Street
    Williamsport, PA 17701
    570-323-3768 (telephone)
    570-323-6191 (facsimile)
    Attorney for Plaintiff